## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

MITCHELL C. MOONEY,        )
HARRISON GILMORE, DONNIE L. )
THARP, and SAMUEL KING, on    )
behalf of themselves and other    )
similarly situated,           )
                               )
      **Plaintiffs,**          )     **Case No. 3:07-cv-1018-WKM**
                               )
**v.**                          )
                               )
**ADVANCED DISPOSAL SERVICES** )
**and URRUTIA, INC.,**         )
                               )
      **Defendants.**        )

## OPPOSITION TO PLAINTIFFS' MOTION TO FACILITATE NOTICE AND OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE AND CONSENT FORM

Defendants Advanced Disposal Services ("ADS") and Urrutia, Inc., d/b/a Arrow Disposal ("Urrutia") oppose Plaintiffs' Motion to Facilitate Notice and object to Plaintiffs' Proposed Notice and Consent Form, as set forth below:

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiffs Mitchell Mooney ("Mooney"), Harrison Gilmore ("Gilmore"), Donnie Tharp ("Tharp"), and Samuel King ("King") filed this action on November 19, 2007, against defendants ADS and Urrutia pursuant to the FLSA.  Each plaintiff filed a Consent to Sue with the initial Complaint.  This collective action commenced when plaintiffs filed their Complaint, along with their Consents.  *See*

29 U.S.C. §§ 216(b); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1132-33 (D. Nev. 1999). Plaintiffs have alleged willful violations of the FLSA; thus, for purposes of this Opposition only, the putative collective action period begins on November 19, 2004. On April 7, 2008, Plaintiffs filed a Motion to Facilitate Notice Pursuant to Section 216(b) of the Fair Labor Standards Act, seeking nationwide notice to all individuals employed in the position of Truck Driver with defendants during the last three years.

## II.    FACTUAL BACKGROUND

### A.    ADS

Defendant ADS provides waste management services throughout the Southeast, including Alabama. (Guest Dec. ¶ 1). ADS' corporate office is located in Jacksonville, Florida. (Guest Dec. ¶ 1). Currently, ADS provides service in the Florida, Georgia, Alabama, Mississippi, South Carolina, and several air force bases. (Guest Dec. ¶ 1).

ADS currently employs approximately 530 drivers. (Guest Dec. ¶ 2). Its drivers are paid a day rate plus diminished overtime for work in excess of 40 hours a week, in accordance with 29 C.F.R. 778.112. (Guest Dec. ¶ 2; Cannon Dec. ¶ 1; Burkhalter Dec. ¶ 1; Tumlin Dec. ¶ 1 ). As such, the drivers are guaranteed a day rate, and then, for hours worked in excess of 40 hours in a week, the drivers' pay

2

rate changes for calculating overtime.  (Id.).  ADS' Employee Handbook provides the following regarding time cards:

> Employees are required to record their time worked, usually through the use of a time clock or a time sheet.  You must record your own time.  You must not permit another employee to record your time and you may not record the time of another employee without approval from your supervisor.  If you make a mistake recording your time, you should contact your supervisor or nearest member of management immediately to make the correction.  The employee and supervisor or manager should initial corrections.  At the end of your workweek, you must sign your time card or time sheet to verify that the time you entered is true and correct.  Falsification and tampering with time records are serious matters that could lead to disciplinary action up to and including discharge.

(Guest Dec. ¶ 3)  ADS drivers typically record their time in one of two ways.  (Guest Dec. ¶ 3). One way is that the drivers scan their hands in when they arrive to work in the morning to clock in, and when the drivers finish for the day, they scan their hands in to clock out.  (Guest Dec. ¶ 3).  Their time is maintained and calculated on a computer and then forwarded to a third party for processing and payment.  (Guest Dec. ¶ 3).  The second way is for the drivers to scan in and scan out by swiping a card through a time clock, and the records are then forwarded to a third party processing company for payment.  (Guest Dec. ¶ 3).  Under both methods, the drivers are paid a guaranteed day rate plus overtime for hours worked in excess of 40 during a work week.  (Guest Dec. ¶ 3).

3

## B.     ADS' Acquisition Of Urrutia

ADS acquired Urrutia on June 4, 2007.  (Guest Dec. ¶ 4).  Urrutia continues to do business as Arrow Disposal, but it is now owned and operated by ADS. (Guest Dec. ¶ 4). Urrutia employees became ADS employees effective June 4, 2007.  (Guest Dec. ¶ 4).  At the time of the acquisition, Urrutia employed approximately 124 drivers and had employees at locations in Alabama, several air force bases, and Ft. Walton Beach, Florida.  (Guest Dec. ¶ 4).  Urrutia paid its drivers a day rate, plus diminished overtime for time worked in excess of 40 hours a week. (Guest Dec. ¶ 5; Cannon Dec. ¶ 1; Burkhalter Dec. ¶ 1; Tumlin Dec. ¶ 1; Gibson Dec. ¶ 1).   Urrutia did not have hand-scanners for its drivers, but the drivers' time was maintained pursuant to a time clock. (Guest Dec. ¶ 5; Gibson Dec. ¶ 2). Then, at the end of the week, the drivers were paid diminished overtime for time worked in excess of 40 hours a week.  (Gibson Dec. ¶ 2).

## C.     Named Plaintiffs

Plaintiff Mooney was hired by Urrutia on June 20, 2005 in Alexander City, Alabama.  (Guest Dec. ¶ 7).  Plaintiff Mooney had an on-the-job injury while working for Urrutia and was on leave when ADS acquired Urrutia. (Guest Dec. ¶ 7). Plaintiff Mooney's employment was terminated in late June or early July 2007 for failing to report to work after being released to light duty by his doctor.  (Guest Dec. ¶ 7). Plaintiff Mooney never received a paycheck from ADS and never

4

performed any work for ADS.  (Guest Dec. ¶ 7).  While working for Urrutia, plaintiff Mooney was paid a day rate of $120 a day, plus diminished overtime for hours worked in excess of 40 hours a week.  (Guest Dec. ¶ 7).

Plaintiff King worked for Urrutia in Alexander City from October 17, 2004 through November 4, 2005. (Guest Dec. ¶ 8). While working for Urrutia, plaintiff King was paid a guaranteed day rate, plus diminished overtime for hours worked in excess of 40 hours a week.  (Guest Dec. ¶ 8).

Plaintiff Tharp worked for Urrutia in Alexander City from March 21, 2005 through June 7, 2005. (Guest Dec. ¶ 9). While working for Urrutia, plaintiff Tharp was paid a guaranteed day rate, plus diminished overtime for hours worked in excess of 40 hours a week.  (Guest Dec. ¶ 9).

Plaintiff Gilmore was never an employee of Urrutia or ADS. (Guest Dec. ¶ 10; Gibson Dec. ¶ 3). Instead, he worked through a temporary agency. (Guest Dec. ¶ 10; Gibson Dec. ¶ 3).  Plaintiff Gilmore never received a paycheck from Urrutia or ADS.  (Guest Dec. ¶ 3).

## III.  <u>PLAINTIFFS ARE NOT ENTITLED TO FACILITATE NOTICE</u>

Plaintiffs allege that defendants violated the FLSA by not paying them overtime for hours worked in excess of 40 hours a week.  Section 216(b) of the FLSA authorizes a plaintiff seeking relief under the FLSA to bring what is called a "collective action" on behalf of similarly situated persons subject to the

5

requirement that any person who wishes to become a part of the collective action must file a written consent in the court in which the action is pending.  *See* 29 U.S.C. § 216(b); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1274 (M.D. Ala. 2004).  In *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989), the United States Supreme Court discussed the issuance of notice pursuant to § 216(b) and explained that early participation by the district court in the notice process protects against misleading communications and misuse of the class device, enables the court to resolve disputes about the contents of the notice before it is sent out, and ensures that all potential plaintiffs receive timely notice of a pending suit, which prevents the proliferation of multiple individual suits arising from the same alleged conduct.  The Court in *Hoffman-LaRoche* also explained that by setting a cut-off date for the receipt of the consents, the district court "has discretion, in appropriate cases, . . . to facilitate notice to potential plaintiffs" in actions brought under § 216(b).  493 U.S. at 169.  Further, in *Dybach v. Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991), the Eleventh Circuit Court of Appeals explained that "the broad remedial purpose of the Act is best served if the district court is deemed to have the power to give such notice to other potential members of the plaintiff class to opt-in if they so desire."

Before issuing notice, "the district court should satisfy itself that there are other employees of the employer who desire to opt-in and who are 'similarly

situated' with respect to their job requirements and with regard to their pay provisions." *Davis*, 303 F. Supp. 2d 1272, 1275 (*quoting Dybach*, 942 F.2d at 1567-68). In *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001), the Eleventh Circuit Court of Appeals recommended a two part-procedure to use in certifying collective actions under § 216(b). The *Hipp* Court provided as follows:

> The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision- usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original named plaintiffs-proceed to trial on their individual claims.

*Davis*, 303 F. Supp. 2d 1272, 1275 (*quoting Hipp*, 252 F.2d at 218).

The present case is at the "notice stage," so a more lenient standard applies. However, plaintiffs have not presented sufficient evidence that there are other employees who desire to 'opt-in' to the litigation. Further, plaintiffs have not presented sufficient evidence that they are similarly situated to each other, much less to drivers who received paychecks from ADS and to other drivers for Urrutia who worked outside of Alexander City. Therefore, even under the more lenient standard, plaintiffs' motion to facilitate notice should be denied.

### A.    Plaintiffs Have No Evidence Of Others Willing To Opt In

Named Plaintiffs submitted their own declarations in an attempt to show that others are willing to opt-in. However, such evidence is limited to one sentence in each declaration (paragraph 5 of each declaration) that provides as follows:

> I am personally aware of other hourly employees who may be interested in joining in this case if given the opportunity.

Named Plaintiffs offer no identities of who these persons are who would join the case. Named Plaintiffs offer no indication if the unknown persons worked for Urrutia, for ADS, or both. Named Plaintiffs offer no indication that they have spoken to, much less found, anyone interested in joining the case. Most telling of plaintiffs' failure to show others interested in joining the case is that plaintiffs filed this lawsuit on November 19, 2007 and to date, Named Plaintiffs have failed to identify even one additional plaintiff interested in joining this litigation.

8

The law is clear that a plaintiff's "mere stated belief in the existence of other employees who desire to opt-in is insufficient." *Davis v. Charoen Popkphand*, 303 F. Supp.2d 1272, 1277 (M.D. Ala. 2004). Unsupported expectations that additional plaintiffs will come forward are also insufficient. *Id. See also Mackenzie v. Kindred Hospitals East, L.L.C.*, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003). Notice should not be issued as a mechanism to determine *whether* there are others who desire to join a collective action. *See, e.g., Dybach*, 942 F.2d at 1567-68 (determinations regarding other plaintiffs willing to opt in and "similarly situated" issue should be made <u>before</u> notice is issued).

Plaintiffs have offered no more than a mere belief consisting of unsupported assertions that others will join. Such evidence is insufficient. For example, in *Davis*, the Court found that plaintiffs did not meet their burden of "demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose." 303 F. Supp. 2d 1272, 1277. In *Davis*, the plaintiffs relied on the deposition testimony of one named plaintiff that she had spoken to at least 12 employees and that they indicated that they would join the lawsuit. 303 F. Supp. 2d 1272, 1277. However, plaintiffs did not offer affidavits from any of the 12 employees that they were willing to join the lawsuit nor had any of the 12 employees filed consents to join the lawsuit.

The present case is similar to *Davis* in that there are no affidavits or consents from other current or former employees of defendants who are willing to join the case.  In contrast, defendants have submitted declarations from William Cannon, James Burkhalter, and Larry Tumlin, current ADS Truck Drivers in Alexander City who worked for Urrutia prior to the ADS acquisition. Each employee admits to being paid overtime. (Cannon Dec. ¶ 1; Burkhalter Dec. ¶ 1; Tumlin Dec. ¶ 1). Therefore, plaintiffs have failed to satisfy the first requirement for collective action treatment, and their Motion to Facilitate Notice should be denied on that basis alone.

**B.    Plaintiffs Are Not Similarly Situated To Each Other, Or To The Putative Members Of The Collective Action**

The FLSA does not specifically define the term "similarly situated," and it has been left largely to a matter of interpretation for the trial courts.  *Harper v. Lovett's Buffett, Inc.* 185 F.R.D. 358 (M.D. Ala. 1999).  Although an overarching corporate-wide policy is not necessary to justify certification as a collective action, it is nonetheless true that "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Holt v. Rite-Aid Corp.*, 333 F.Supp.2d 1265, 1270 (M.D. Ala. 2004).

Several factors have emerged as relevant to an assessment of whether the "similarly situated" requirement has been satisfied.  *See generally Hipp v. Lilberty*

10

*Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001); *Grayson v. K-Mart Corp.*, 79

F.3d 1086 (11th Circ), *cert. denied*, 519 U.S. 982, 117 S. Ct. 435, 136 L.Ed.2d 332

and 519 U.S. 987, 117 S. Ct. 447, 136 L.Ed.2d 342 (1996); *Reed v. Mobile County*

*Sch. Sys.*, 246 F.Supp. 2d 1227 (S.D. Ala. 2003).   These factors include whether

the employees held different job titles and worked in different geographical

locations, whether the alleged violations occurred during different time periods and

by different decisionmakers, and whether the employees allege similar FLSA

violations.   *See Baum v. Shoney's, Inc.*, 1998 WL 968390 (M.D. Fla. 1998) (held,

that plaintiffs failed to meet burden of proving they were "similarly situated" to

putative nationwide class because their evidence pertained only to restaurants in

single county); *Mackenzie, supra*, 276 F.Supp.2d at 1221 (rejecting plaintiffs'

motion for notice to individuals "with different titles and job duties distinct from,

or unknown to, the plaintiff"); *Reed*, 246 F.Supp.2d 1232-33 (denying conditional

certification after consideration of geography, autonomy of operational units,

autonomy of individuals within single location, and similarity of treatment of

plaintiffs to treatment of putative class members); *Stone v. First Union Corp.*, 203

F.R.D. 532, 542-43 (S.D. Fla. 2001) (in ADEA[1] case, granting defendant's motion

to decertify collective action because job titles, operating units, adverse

employment actions, and geography were diverse); *Horne v. USAA,* 279 F.Supp.2d

---

[1] The Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. ("ADEA") also permits collective actions pursuant to 29 U.S.C. §216(b).

1231,1235-36 (M.D. Ala. 2003) (rejecting plaintiff's motion for notice where plaintiff alleged that he could not meet defendant's production goals in 40-hour workweek and was not paid overtime for hours in excess of 40; plaintiff's "alleged failure to receive overtime could merely be an occurrence unique to [the plaintiff"]); *White v. Osmose, Inc.* 204 F.Supp.2d 1309, 1314 (M.D. Ala. 2002) (granting limited conditional certification to plaintiffs and putative class members who reported to same manager; denying conditional certification to wider base of class members).

Plaintiffs bear the burden of establishing that they and any putative members of the collective action are similarly situated. *See, e.g., Grayson*, 79 F.3d at 1096; *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). Where plaintiffs have failed to meet their burden, courts have not hesitated in refusing to authorize notice. *See, e.g., Brooks v. BellSouth Telecom., Inc.* 164 F.R.D. 561, 569 (N.D. Ala. 1995) (applying "more stringent" standard), *aff'd without opinion*, 114 F.3d 1202 (11th Cir. 1997) (employees in nine states, who were employed in different departments and who reported to different supervisors, were not similarly situated); *Haynes*, 696 F.2d at 887-888 (upholding district court's refusal to authorize state-wide notice based only on "counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *Harper and Tucker v. Labor Leasing, Inc.* 872 F.Supp. 941, 948 (M.D. Fla. 1994)

(plaintiffs failed to show that employees at truck terminals other than the terminal where the named plaintiffs worked were similarly situated to the named plaintiffs); *Baum*, 1998 WL 968390 (plaintiffs failed to provide any evidence that employees in restaurants outside a single county were similarly situated to plaintiffs, that FLSA violations occurred at restaurants outside this single county, or that potential class members were victims of a single policy or plan); *Harper*, 185 F.R.D. at 361-62 (plaintiffs failed to establish that they were similarly situated to proposed opt-in class consisting of hourly wage employees who worked at any of employer's family-style restaurants in Southeast).

Named Plaintiffs in this case are not "similarly situated" to the members of the putative collective action. First, plaintiffs seek to issue notice to all drivers of ADS for the last three years. However, none of the Named Plaintiffs ever performed work for ADS, and none of the plaintiffs ever received a paycheck from ADS. Additionally, prior to June 4, 2007, ADS only employed 39 drivers in Alabama and primarily operated in Georgia and Florida. Each Named Plaintiff worked only at the Urrutia transfer station in Alexander City, Alabama. Named Plaintiffs never worked in Georgia or Florida. Thus, Plaintiffs are not similarly situated to ADS or Urrutia drivers outside of Alexander City. Second, the Named Plaintiffs are not similarly situated to one another. Plaintiff Gilmore was not an employee of Urrutia or ADS. Instead, he worked at Urrutia through a temporary

13

agency in 2005 and never received a paycheck from Urrutia.   Therefore, plaintiff Gilmore is not similarly situated to the other Named Plaintiffs, to Urrutia employees, or to ADS employees.

Notably, plaintiffs cited three cases to support their argument that they are similarly situated to all truck drivers for ADS and Urrutia; however, the cases do not support their argument.  For example, in *Tucker v. Labor Leasing, Inc.*, the collective action was limited to the one terminal where plaintiffs worked.   In *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 419 (M.D. Ala. 1991), the plaintiffs offered evidence of 40 other women in the region who could show that males had been paid more than them (in contrast to the dearth of such evidence in the instant case).  As such, the Court ordered notice to be sent in that region.

Finally, plaintiffs cite to *Belcher v. Showney's, Inc.*, 927 F. Supp. 249 (M.D. Ten. 1996) for the proposition that the plaintiffs are similarly situated to other ADS and Urrutia drivers.  However, *Belcher* further shows why the named plaintiffs are not similarly situated to other ADS and Urrutia drivers.  In *Belcher*, the Court found that the employees made a sufficient showing that the individuals to whom they sought to send notice to were similarly situated.  The plaintiffs' evidence in *Belcher* consisted of 24 affidavits supporting plaintiffs' claims and evidence that over 400 individuals had already filed consents and that those individuals represented 22 states and over 200 cities.  927 F. Supp. 249, 252.  Specifically, the

Court found that "[t]he affidavits indicate that these practices were not limited to a single store or region." *Id*. In contrast, named plaintiffs' evidence is limited to one of 14 Urrutia facilities and includes no ADS employees.

For these reasons, plaintiffs' motion should be denied.

### C.    Plaintiffs Failed To Show That A Collective Action Would Resolve The Status Of The Proposed Class

The purpose of allowing notice and a collective action to proceed is to allow "*efficient resolution* in one proceeding of common issues of law and fact arising from the same alleged [conduct]." *Hoffman-LaRoche*, 493 U.S. at 170 (emphasis added). Certifying a collective action in this case would create a "individualized nightmare" for the Court. The Court would be required to assess whether each individual truck drivers' hours were properly calculated under either the ADS or Urrutia system, and then determine how much overtime each individual plaintiff worked and whether each individual plaintiff was properly paid the correct amount of overtime. In summary, plaintiffs have attempted to cobble together a mismatched muddle of individuals who have very little in common except for a shared ex-employer by three of the named plaintiffs. "[L]itigating this case as a collective action would be anything but efficient." *Morisky*, 11 F.Supp.2d at 499. Therefore, notice should not be permitted.

**D.    Appropriate Relief**

Defendants submit that this action should be treated as the classic, non-collective, multiple-plaintiff lawsuit that it is.  In the alternative, and in the event that the Court determines that treatment as a collective action is warranted, defendants submit that the collective action should be limited to the truck drivers who worked for Urrutia in Alexander City, Alabama.

**IV.    DEFENDANTS' OBJECTIONS TO PLAINTIFFS' PROPOSED NOTICE AND CONSENT FORM**

For the reasons discussed above, plaintiffs' Motion to Facilitate Notice is due to be denied.  However, should plaintiffs' Motion not be denied, defendants object to plaintiffs' Proposed Notice and Consent Form for the following reasons:

**A.    Defendants' Objections To The Proposed Notice**

**1.    The notice should specify an opt-in deadline of thirty (30) days  from the date of mailing of the Notice and Consent forms**

On page 13 of their brief, plaintiffs provide that "[t]hose class members interested in participating would be required to file their consents with the Court within 90 days of the mailing."  Defendants object to a ninety (90) day opt-in period and propose a thirty (30) day opt-in period.  This time period will provide the plaintiffs with sufficient time to issue the Court's approved Notice and potential plaintiffs with sufficient time in which to join the suit.  A thirty (30) day

16

opt-in period has been utilized by other courts.  *See e.g. Barron v. Henry County School System*, 242 F. Supp. 2d 1096, 1106-07 (M.D. Ala. 2003).

> **2.     The Notice Should Notify Prospective Plaintiffs That They Are Free To Select Their Own Counsel**

Defendants further object to plaintiffs' Proposed Notice on the basis that it does not inform potential plaintiffs that they may select their own counsel.  Instead, it indicates that "[t]he names and addresses of your attorneys are" and provides the names of the named plaintiffs' attorneys.  Potential plaintiffs who wish to join the litigation have the right to select their own counsel.  *See Heitmann v. City of Chicago*, 2004 WL 1718420, * 3 (N.D. Ill. 2004)(the consent form should allow potential plaintiffs to elect separate counsel because it provides the appropriate respect to potential plaintiffs of their right to elect counsel of their own choosing); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003) (authorizing notice provided "you can join this lawsuit by counsel of your own choosing"); *Soler v. G&U, Inc.* 86 F.R.D. 524, 530 (S.D.N.Y. 1980) ("the workers [plaintiffs] should be informed that they may retain their own counsel").  For these reasons, the proposed Notice should be modified to inform the potential plaintiffs of their right to select their own counsel.

### 3. The Proposed Notice Should Reflect The Correct Defendants

The heading of the Proposed Notice provides that the lawsuit is against "Arrow Disposal / Advance / Urrutia, Inc." As such, the correct defendants are not properly identified. The heading should provide as follows:

> RE:   Fair Labor Standards Act ("FLSA") lawsuit against Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal.

This change should be made in all locations that currently refer to defendants as "Arrow Disposal / Advance / Urrutia, Inc."

### 4. Objections To The Description Of The Lawsuit

First, the description of the lawsuit provides that "[t]hese individuals currently work and/or worked as Truck Drivers for Arrow Disposal/Advance/Urrutia . . ." This statement inaccurately describes the named plaintiffs. None of the named plaintiffs worked for ADS, and none of the named plaintiffs received a paycheck from ADS. Further, plaintiff Gilmore was not an employee of either ADS or Urrutia, Inc. and never received a paycheck from either company. Instead, he worked through a temporary employment agency. As such, defendants propose the following language to describe the named plaintiffs:

> Plaintiffs Tharp and King worked for Urrutia, Inc. in 2005 as Truck Drivers. Plaintiff Mooney worked for Urrutia, Inc. from 2005 through June 4, 2007 as a Truck Driver. Plaintiff Gilmore was not an employee of Urrutia, Inc. or Advanced Disposal Services. Plaintiffs allege that Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal did not properly compensate them for all hours that they

18

worked.  Plaintiffs further allege that they should have been paid overtime for all weeks of employment in which they worked over 40 hours per week.

Defendants also object to the description of their defenses because the statement "Arrow Disposal/Advance/Urrutia, Inc. denies that Truck Drivers are entitled to overtime compensation or any other damages and asserts that it paid its Truck Drivers properly under the law by paying them a weekly salary" infers that defendants do not pay overtime to drivers.  To accurately reflect defendants' defenses, the proposed description should read as follows:

> Defendants Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal assert that plaintiffs were paid for all hours worked and were properly paid overtime, so defendants deny that the plaintiffs are entitled to any damages.  Defendants Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal further assert that they paid their Truck Drivers properly under the law by paying them a day rate plus overtime for time worked in excess of 40 hours a week.

Finally, the description of the lawsuit contains no indication that the named plaintiffs' or the proposed plaintiffs' claims are limited by a statute of limitations. The law is clear that neither the named plaintiffs nor other potential class members may recover unpaid wages beyond the applicable statute of limitations, which in this case would be a maximum period of three years from the date on which a plaintiff opts-in, based upon named plaintiffs' claim for willful violations.  While the Proposed Notice indicates that only those who have been employed within

three (3) years from the date of receiving notice can join, the Proposed Description of the Lawsuit should also provide as follows:

> The named plaintiffs are only potentially entitled to recover unpaid wages or overtime for a period of three years from the date of the complaint and potential class members may only potentially recover unpaid wages or overtime for a period of three years from the date the consent form is filed.

### 5. The Notice Should Inform Potential Plaintiffs That They May Be Required To Testify in Auburn / Opelika, Alabama

In explaining plaintiffs' rights about the lawsuit, plaintiffs should also be informed that they may be required to testify in Auburn / Opelika, Alabama. Many of the Truck Drivers to whom the plaintiffs wish to provide notice of the lawsuit live in Florida, Georgia, Mississippi, and other parts of Alabama, and they are entitled to know that as part of this litigation they may be required to testify out of state.

### B. Objections To The Consent Form

As in the Proposed Notice, plaintiffs identify the defendants as "Arrow Disposal/Advance/Urrutia, Inc." Defendants request that the Consent be corrected to accurately identify them as follows: "Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal."

Finally, the Consent Form requests that plaintiffs include their social security numbers in their Consent Forms. Defendants object to the inclusion of such information in the Consent Form. The guidelines for Electronic Filing in the

20

United States District Court for the Middle District of Alabama forbid the inclusion of social security numbers in filings. Further, there is no indication that this information is necessary in order for individuals to opt-in to this litigation. As such, the potential plaintiffs who wish to file Consent Forms should not be required to include their social security numbers in the filing.

## V.    OBJECTIONS TO LIMITED DISCOVERY

Plaintiffs request that defendants produce a computer readable data file containing the names, addresses, Social Security numbers, and telephone numbers for all potential opt-in plaintiffs. Defendants have no objection to producing the names and addresses of the potential opt-in plaintiffs. However, defendants object to producing the social security numbers and phone numbers. To send notice, plaintiffs do not need the social security number or phone numbers of potential plaintiffs. Should a notice form be returned due to an improper address, defendants are willing to provide the social security number and/or phone number of those potential opt-in plaintiffs to assist in determining a correct address. However, the social security numbers and phone numbers are not relevant for any other purpose and constitute sensitive, confidential information that should be protected. Should the potential opt-in plaintiffs wish to provide counsel for named plaintiffs with their social security numbers and/or phone numbers, it is their prerogative and not defendants.

387310.1

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, defendants Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal respectfully request that the Court deny plaintiffs' Motion to Facilitate Notice because there is no evidence of others willing to join the litigation and because plaintiffs are not similarly situated to the putative class members.  At best, plaintiffs are similarly situated to other Truck Drivers in the Alexander City transfer station who worked for Urrutia, Inc. prior to the acquisition by Advanced Disposal Services on June 4, 2007.  Should the Court grant plaintiffs' Motion to Facilitate Notice, defendants request that the Court modify the Proposed Notice and Consent Form as discussed above.  Finally, defendants Advanced Disposal Services and Urrutia, Inc., d/b/a Arrow Disposal request that the Court deny plaintiffs' request to produce the social security numbers and phone numbers of the potential class members.

*/s/ J. Tobias Dykes*

J. Tobias Dykes (ASB-0483-E66J)
tdykes@constangy.com
**CONSTANGY, BROOKS & SMITH, LLC**
1819 Fifth Avenue North
Suite 900
Birmingham, Alabama 35203
Telephone (205) 252-9321
Facsimile (205) 323-7674

387310.1

*/s/ Margaret P. Zabijaka*

MARGARET P. ZABIJAKA
Florida State Bar No. 0119880
200 West Forsyth Street, Ste. 1700
Jacksonville, FL  32202-4317
(904) 356-8900

**ATTORNEYS  FOR DEFENDANTS
ADVANCED DISPOSAL SERVICES AND
URRUTIA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned electronically filed the foregoing Motion for Extension with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

> Gregory O. Wiggins
> WIGGINS CHILDS QUINN & PANTAZIS, LLC
> The Kress Building
> 301 19th Street North
> Birmingham, AL  35203

> Allwin E. Horn, IV
> ALLWIN E. HORN, IV, PC
> 1130 South 22nd Street, Ste. 4500
> Birmingham, AL  35205

This the 28th day of April, 2008.


                              */s/ J. Tobias Dykes*
                              Counsel of Record

24

# EXHIBIT
# A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MITCHELL C. MOONEY,                    )
HARRISON GILMORE, DONNIE L. )
THARP, and SAMUEL KING, on       )
behalf of themselves and others      )
similarly situated,                         )
                                                   )
           Plaintiffs,                          )        Case No. 3:07-cv-1018-WKM
                                                   )
v.                                                 )
                                                   )
ADVANCED DISPOSAL SERVICES )
and URRUTIA, INC.,                      )
                                                   )
           Defendants.                       )

## DECLARATION OF GLENN GUEST

My name is Glenn Guest.  I am the Director, Corporate Human Resources for Advanced Disposal Services.   In my job as Director, Corporate Human Resources, I have access to pay records, schedules, and personnel files for truck drivers who work for Advanced Disposal Services and who worked for Urrutia, Inc. d/b/a Arrow Disposal prior to the acquisition of Urrutia, Inc. by Advanced Disposal Services ("ADS") on June 4, 2007.  This declaration is based on my personal knowledge.

1.    Defendant ADS provides waste management services throughout the Southeast including Alabama. ADS' corporate office is located in Jacksonville,

Florida. Currently, ADS provides service in Florida, Georgia, Alabama, Mississippi, South Carolina, and several air force bases.

2.      ADS currently employs approximately 530 drivers. Its drivers are paid a day rate plus diminished overtime for work in excess of 40 hours a week. As such, the drivers are guaranteed a day rate, and then, for hours worked in excess of 40 hours in a week, the drivers' pay rate changes for calculating overtime.

3.      ADS' Employee Handbook provides the following regarding time cards:

> Employees are required to record their time worked, usually through the use of a time clock or a time sheet. You must record your own time. You must not permit another employee to record your time and you may not record the time of another employee without approval from your supervisor. If you make a mistake recording your time, you should contact your supervisor or nearest member of management immediately to make the correction. The employee and supervisor or manager should initial corrections. At the end of your workweek, you must sign your time card or time sheet verifying that the time you entered is true and correct. Falsification and tampering with time records are serious matters that could lead to disciplinary action up to and including discharge.

ADS drivers typically record their time in one of two ways. One way is that the drivers scan their hands in when they arrive to work in the morning to clock in, and when the drivers finish for the day, they scan their hands in to clock out. Their time is maintained and calculated on a computer and then forwarded to ADP for processing and payment. The second way is for the drivers to scan in and scan out

by swiping a card through a time clock, and then, the records are forwarded to ADP for payment. Under both methods, the drivers are paid a guaranteed day rate plus overtime for hours worked in excess of 40 during a work week.

4.    ADS acquired Urrutia, Inc. d/b/a Arrow Disposal on June 4, 2007. Urrutia, Inc. continues to do business as Arrow Disposal, but it is now owned and operated by ADS.    Further, Urrutia employees became ADS employees effective June 4, 2007.  At the time of the acquisition, Urrutia employed approximately 124 drivers and had employees at locations in Alabama, several air force bases, and Ft. Walton Beach, Florida.

5.    Urrutia paid its drivers a day rate, plus diminished overtime for time worked in excess of 40 hours a week.  Urrutia did not have hand-scanners for its drivers, but the drivers' time was maintained pursuant to a time clock.  Then, at the end of the week, the drivers were paid diminished overtime for time worked in excess of 40 hours a week.  The Named Plaintiffs worked only at the Urrutia transfer station in Alexander City, Alabama.

6.    Prior to the acquisition of Urrutia, ADS only had 89 employees, 39 of whom were drivers in Alabama.  None of those drivers were in Alexander City, Alabama.

7.    None of the named plaintiffs received a paycheck from ADS. Plaintiff Mooney was hired by Urrutia on June 20, 2005 in Alexander City.

Plaintiff Mooney had an on-the-job injury while working for Urrutia and was on leave when ADS acquired Urrutia. Plaintiff Mooney's employment was terminated in late June or early July 2007 for failing to report to work after being released to light duty by his doctor. Plaintiff Mooney never received a paycheck from ADS and never performed any work for ADS. While working for Urrutia, plaintiff Mooney was paid a day rate of $120 a day, plus diminished overtime for hours worked in excess of 40 hours a week.

8.    Plaintiff King worked for Urrutia in Alexander City from October 17, 2004 through November 4, 2005. While working for Urrutia, plaintiff King was paid a guaranteed day rate, plus diminished overtime for hours worked in excess of 40 hours a week.

9.    Plaintiff Tharp worked for Urrutia in Alexander City from March 21, 2005 through June 7, 2005. While working for Urrutia, plaintiff Tharp was paid a guaranteed day rate, plus diminished overtime for hours worked in excess of 40 hours a week.

10.    Plaintiff Gilmore was never an employee of Urrutia or ADS. Instead, he worked through a temporary agency. Plaintiff Gilmore never received a paycheck from Urrutia or ADS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of April, 2008.

Glenn Guest

# EXHIBIT
# B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL C. MOONEY, HARRISON GILMORE, DONNIE L. THARP, and SAMUEL KING, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:07-cv-1018-WKM |
| v. | ) ) | |
| ADVANCED DISPOSAL SERVICES and URRUTIA, INC., | ) ) ) | |
| Defendants. | ) | |

## DECLARATION OF WILLIAM CANNON

My name is William Cannon. I work as a truck driver for Arrow Disposal and have worked for Arrow Disposal since 2004 or early 2005. Arrow Disposal was operated by Urrutia, Inc. and it is now operated by Advanced Disposal Services. I have worked for Arrow Disposal in Alexander City and in Birmingham. I have been in Alexander City since 2005.

1. While working for Arrow Disposal, I have always been paid a day rate. Now, my day rate is $123 a day. I am guaranteed to be paid $123 day. Then, for time worked over 40 hours a week, my pay rate changes. While my day rate has changed during my employment with Arrow Disposal, the way I have been paid has not changed. Throughout my employment with Arrow Disposal, while it

was Urrutia, Inc. and now that it is Advanced Disposal Services, I have been paid overtime for time that I worked over 40 hours a week.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___11ᵗʰ___ day of April, 2008.

_____
William Cannon

# EXHIBIT
# C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

MITCHELL C. MOONEY,                )
HARRISON GILMORE, DONNIE L.        )
THARP, and SAMUEL KING, on         )
behalf of themselves and others    )
similarly situated,                )
                                   )
            Plaintiffs,            )     Case No. 3:07-cv-1018-WKM
                                   )
v.                                 )
                                   )
ADVANCED DISPOSAL SERVICES         )
and URRUTIA, INC.,                 )
                                   )
            Defendants.            )

## DECLARATION OF JAMES BURKHALTER

My name is James Burkhalter. I have worked as a truck driver and a supervisor for Arrow Disposal since October 25, 2005. During this time, Arrow Disposal has been operated by Urrutia, Inc. and Advanced Disposal Services. Throughout my employment with Arrow Disposal, I have worked out of the transfer station in Alexander City.

During my employment with Arrow Disposal, before the acquisition by Advanced Disposal Services, I was paid a day rate and have always been guaranteed the day rate. Then, when I worked over 40 hours in a week, my pay rate would change for calculating my overtime pay. I have always been paid overtime when I worked more than 40 hours in a week. After the acquisition by

Advanced Disposal, I have been paid an hourly rate, a day rate, and a salary. When I have been paid a day rate or an hourly rate, I have been paid overtime when I worked more than 40 hours in a week. The only time I have been paid a day rate since the acquisition has been while working as a driver.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___18th___ day of April, 2008.

_James Burkhalter_

James Burkhalter

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MITCHELL C. MOONEY, | ) | |
| HARRISON GILMORE, DONNIE L. | ) | |
| THARP, and SAMUEL KING, on | ) | |
| behalf of themselves and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:07-cv-1018-WKM |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED DISPOSAL SERVICES | ) | |
| and URRUTIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF LARRY TUMLIN

My name is Larry Tumlin.  I work as a truck driver for Arrow Disposal and have worked for Arrow Disposal since 2004 or early 2005.  Arrow Disposal was operated by Urrutia, Inc. and it is now operated by Advanced Disposal Services.  I have always worked for Arrow Disposal in Alexander City.

1.    While working for Arrow Disposal, I have always been paid a guaranteed day rate.  Then, for time worked over 40 hours a week, my pay rate changes. While my day rate has changed during my employment with Arrow Disposal, the way I have been paid has not changed.  Throughout my employment with Arrow Disposal, while it was Urrutia, Inc. and now that it is Advanced

383190.1

Disposal Services, I have been paid overtime for time that I worked over 40 hours a week.

2.    I helped train Mitch Mooney, Samuel King, and Donnie Tharp on their routes and about the garbage business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___18th___ day of April, 2008.

Larry Cumlin

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL C. MOONEY, | ) | |
| HARRISON GILMORE, DONNIE L. | ) | |
| THARP, and SAMUEL KING, on | ) | |
| behalf of themselves and others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:07-cv-1018-WKM |
| | ) | |
| v. | ) | |
| | ) | |
| ADVANCED DISPOSAL SERVICES | ) | |
| and URRUTIA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF ROBERT GIBSON

My name is Robert Gibson. I am Site Manager for the Arrow Disposal transfer station in Alexander City. I have worked for Arrow Disposal as a Site Manager in Alexander City for about 3 years. I have worked for Arrow Disposal since March 1, 2003. During this time, Arrow Disposal has been operated by Urrutia, Inc. and now it is operated by Advanced Disposal Services.

1.    As a driver for Arrow Disposal, I was paid a day rate. For hours worked over 40, the pay rate changed but I was paid overtime. When I became a Site Manager in 2005, I was paid a salary.

2.    In early 2005, Urrutia, Inc. began using a time clock to record the truck drivers' time. I would then record the truck drivers' time on a spreadsheet

and fax it to Urrutia's corporate office for the accounting department to pay the truck drivers. The drivers were guaranteed a day rate each day, and then, for time worked in excess of 40 hours a week, the drivers pay rate changed. Throughout my time with Arrow Disposal, truck drivers have been paid overtime for time worked over 40 hours a week. Prior to early 2005, when Urrutia began using a time clock, I maintained the truck drivers' time on a spreadsheet, but the truck drivers were paid the same way and were paid overtime when they worked over 40 hours in a week.

3.    Harrison Gilmore was never an employee of Arrow Disposal. He worked through a temporary agency for a few months in 2005 and was never paid by Arrow Disposal and was never an employee of Arrow Disposal, either when it was operated by Urrutia, Inc. or Advanced Disposal Services.

4.    Donnie Tharp did not complete his probationary period with Arrow Disposal in 2005.

5.    Currently, there are 7 truck drivers who work out of the transfer station in Alexander City. Typically, there have been around 7 truck drivers working out of Alexander City.

6.    Other than myself, there are 4 drivers who worked for Arrow Disposal while it was operated by Urrutia who are still working for the company now. They

are William Cannon, James Burkhalter, Larry Tumlin, and Larry Coran.   Larry

Coran is not currently working because he is on disability leave.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____4/18____ day of April, 2008.

_Robert L. Gibson_
_____
Robert Gibson