IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL MOONEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:07-cv-1018-WKW |
| | ) | |
| ADVANCED DISPOSAL SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the plaintiffs' Motion to Facilitate Notice Pursuant
to § 216(b) of the Fair Labor Standards Act (Doc. # 24). The defendants have responded
(Doc. # 26) in opposition, the plaintiffs have replied (Doc. # 27), and the court allowed the
defendants to file a sur-reply (Doc. # 30). Additionally, the defendants recently filed a notice
(Doc. # 31) correcting a factual misstatement contained in their opposition brief. For the
reasons set forth below, the plaintiffs' motion for conditional class certification and
facilitation of notice is due to be denied.

**I. LEGAL STANDARD**

District courts should use the following two-tiered procedure when a plaintiff seeks

to bring a collective action on behalf of similarly situated persons under 29 U.S.C. § 216(b):

> The first determination is made at the so-called "notice stage." At the notice
> stage, the district court makes a decision – usually based only on the pleadings
> and any affidavits which have been submitted – whether notice of the action
> should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a

fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

## II. DISCUSSION

### A.    *Introduction*

On November 19, 2007, Plaintiffs Mitchell Mooney ("Mooney"), Harrison Gilmore ("Gilmore"), Donnie L. Tharp ("Tharp"), and Samuel King ("King") filed their complaint (Doc. # 1) against Defendants Advanced Disposal Services ("ADS") and Urrutia, Inc. ("Urrutia"), seeking to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). All four plaintiffs were formerly employed by the defendants as truck drivers in Alexander City, Alabama. (Doc. # 26, at 4-5.)

The plaintiffs allege that the defendants "had a uniform policy and practice of consistently requiring hourly employees to work overtime without paying them overtime compensation for this work." (Compl. ¶ 8.) To support this, each plaintiff states in his

affidavit that he consistently worked more than forty hours per week, yet was not paid one and a half times his hourly rate for all hours worked over forty per week.  (Mooney Aff. ¶ 3; Gilmore Aff. ¶ 3; Tharp Aff. ¶ 3; King ¶ 3.)  While no one else has filed a consent form seeking to opt-in to this putative collective action, each plaintiff states that he is "personally aware of other hourly employees who may be interested in joining in this case if given the opportunity."  (Mooney Aff. ¶ 5; Gilmore Aff. ¶ 5; Tharp Aff. ¶ 5; King Aff.  ¶ 5.)

The defendants dispute the allegations and provide affidavits from three current truck drivers in Alexander City and one site manager who claim they have always been paid for any overtime worked.  (Cannon Aff. ¶ 1; Burkhalter Aff. ¶ 1; Tumlin Aff. ¶ 1; Gibson Aff. ¶¶ 1-2.)  Also, according to the defendants, there are typically only seven truck drivers working out of Alexander City at any one time.  (Gibson Aff. ¶ 5.)

**B.     *Notice Stage Requirements***

During the notice stage, when the court must make a determination of conditional class certification, "the district court should satisfy itself that there are other employees of the [employer (1)] who desire to 'opt-in' and [(2)] who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  As stated above, this determination is usually made "based only on the pleadings and any affidavits which have been submitted."  *Hipp*, 252 F.3d at 1218.  Plaintiffs in other cases have successfully satisfied the first element through the use of affidavits of other employees, consent forms to join the litigation from other employees, and expert evidence indicating there are other

3

employees who wish to opt-in. *See Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp.

2d 1272, 1277 (M.D. Ala. 2004) (collecting cases). Additionally, in at least one other court

in this circuit, the plaintiff established there were other employees desiring to opt-in on the

basis of their being subjected to a common payroll policy or scheme. *Tucker v. Labor*

*Leasing, Inc.*, 872 F. Supp. 941, 948 (M.D. Fla. 1994) (finding it probable that other clerical

personnel working in the same office may desire to opt-in because they were "likely paid in

the same manner" as the plaintiffs). However, it is insufficient for a plaintiff to rely on a

"mere stated belief in the existence of other employees who desire to opt-in," *Davis*, 303 F.

Supp. 2d at 1277, or "'unsupported expectations that additional plaintiffs will subsequently

come forward.'" *Id.* (quoting *Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211,

1220 (M.D. Fla. 2003)).

A stated belief in the existence of other employees wishing to join this litigation is all

the plaintiffs have to offer. The only affidavits and consent forms that have been filed by the

plaintiffs are their own. Even these affidavits merely state that they are "personally aware

of other hourly employees who may be interested in joining in this case if given the

opportunity." (*See, e.g.*, King Aff. ¶ 5.) As the defendants correctly point out, the "[n]amed

Plaintiffs have failed to identify even one additional plaintiff interested in joining this

litigation," (Defs.' Resp. Br. 8), and have apparently been unable to convince any of these

"other hourly employees" of whom they are aware to join this litigation. The plaintiffs'

explanation for their failure to identify other employees and file additional consent forms is

that they did do these things, except it all happened before the complaint was filed. The

plaintiffs claim Mr. Mooney was the first to contact the attorneys and initiate the case, and

that he subsequently located three additional individuals who wished to join the suit prior to

filing the complaint.[1] (Pls.' Reply Br. 6.) In other words, the plaintiffs claim they should not

be punished for joining other employees in the complaint instead of through the subsequent

filing of consent forms.

At least one district court has found the number of named plaintiffs to be irrelevant

to the question of whether there exist *other* employees who desire to opt-in to the litigation,

instead focusing on the number of people other than the named plaintiffs who have declared

an intent to opt-in. *Saxton v. Title Max of Ala., Inc.*, 431 F. Supp. 2d 1185, 1187 (N.D. Ala.

2006) (finding the number of named plaintiffs "unpersuasive on the issue of opt-in interest"

despite there being thirty-eight of them). While the court views additional evidence of

employees who wish to join beyond the named plaintiffs to be an important factor because

it indicates momentum of increasing numbers, it surely cannot be dispositive. If it were

dispositive, plaintiffs could easily leap this hurdle by naming one plaintiff in the complaint

and adding others at a later date to give the appearance of momentum. *See, e.g.*, *Ohsann v.*

*L.V. Stabler Hosp.*, No. 07-675, 2008 WL 2468559, at *2 (M.D. Ala. June 17, 2008) (naming

one plaintiff in the complaint and filing four additional consent forms when moving for

conditional class certification).

---

[1] This still does not explain why these other employees – of whom the named plaintiffs claim they are personally aware – have not filed consent forms to join this litigation in the meantime if they truly did desire to opt-in to this litigation.

This court declines to elevate form over substance and will not view the lack of any notices of consent other than the named plaintiffs as dispositive. However, without more, the court views the identification of only four plaintiffs – be they all named as such or potential opt-in plaintiffs – as a weak indicator that other employees desire to opt-in under the circumstances. *See, e.g.*, *Wombles v. Title Max of Ala., Inc.*, No. 03-1158, 2005 WL 3312670, at *3 (M.D. Ala. Dec. 7, 2005) (finding first prong not satisfied with five named plaintiffs and two opt-in plaintiffs). The argument that other employees exist who desire to join the litigation is further weakened by the affidavits of one former and three current truck drivers who claim they were always paid overtime, (Cannon Aff. ¶ 1; Burkhalter Aff. ¶ 1; Tumlin Aff. ¶ 1; Gibson Aff. ¶¶ 1-2), especially in light of the relatively small numbers of truck drivers (seven) who are employed at the Alexander City facility at any one time. *Wombles*, 2005 WL 3312670, at *3 (weighing employer's submission of affidavits from current employees against the plaintiffs' evidence); *Saxton*, 431 F. Supp. 2d at 1187 (same).

While an employer's policy or practice has been used to determine if more opt-in plaintiffs were likely to exist, *Tucker*, 872 F. Supp. at 948, here the plaintiffs have not identified what kind of policy or practice is causing the alleged FLSA violations, such as an automatic lunch break deduction or being required to work off the clock. Without any idea of what policy or practice may be the culprit of the alleged FLSA violations, the court cannot extrapolate a theory that all other truck drivers were also subject to the unknown policy. From aught that appears in the record, the overtime violations, if any, could have been the

6

result of some policy that is confined to these four named plaintiffs and, as a result, there

would be no one else who would wish or qualify to opt-in.[2]

Therefore, in the absence of an identified payroll policy or practice that violates the

FLSA and in the absence of any additional consent forms from other employees wishing to

join the litigation since it began in November 2007, the fact that four named plaintiffs who

merely claim they know of others who wish to join the litigation is insufficient to establish

the first prong of the notice stage requirements.  Because the plaintiffs have not met their

burden of establishing there exist other employees who desire to join the litigation, there is

no reason to determine if the proposed class would have been similarly situated to the named

plaintiffs.

### III.  CONCLUSION

Therefore, for the reasons set forth above, it is ORDERED that the plaintiffs' Motion

to Facilitate Notice Pursuant to § 216(b) of the Fair Labor Standards Act (Doc. # 24) is

DENIED.

DONE this 14th day of August, 2008.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[2]  A policy that operates to deny overtime to all truck drivers would weigh in favor of a finding that there may be other truck drivers who wish to opt-in.  But a policy that applied only to these four truck drivers would indicate there are likely no other truck drivers who would wish to opt-in.  Without any information on what kind of policy allegedly denied overtime pay, the court cannot rely on it as a factor in determining whether other potential opt-in plaintiffs exist and desire to join in the lawsuit.

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.    **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by
statute:

    (a)    **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and
judgments of district courts, or final orders of bankruptcy courts which have been
appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are
appealable. A final decision is one that "ends the litigation on the merits and leaves
nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre,
701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and
recommendation is not final and appealable until judgment thereon is entered by a
district court judge. 28 U.S.C. § 636(c).

    (b)    **In cases involving multiple parties or multiple claims,** a judgment as to fewer than
all parties or all claims is not a final, appealable decision unless the district court has
certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v.
Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all
issues except matters, such as attorneys' fees and costs, that are collateral to the
merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486
U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v.
Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)    **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders
"granting, continuing, modifying, refusing or dissolving injunctions or refusing to
dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . .
determining the rights and liabilities of parties to admiralty cases in which appeals
from final decrees are allowed." Interlocutory appeals from orders denying temporary
restraining orders are not permitted.

    (d)    **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification
specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to
appeal is filed in the Court of Appeals. The district court's denial of a motion for
certification is not itself appealable.

    (e)    **Appeals pursuant to judicially created exceptions to the finality rule:** Limited
exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial
Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949);
Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d
371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157,
85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)    **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)    **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)    **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)    **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)    **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).